UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE LYNN CHEMA-CLARK,

       Plaintiff,                    CIVIL ACTION NO. 12-cv-12645

   vs.                               DISTRICT JUDGE SEAN F. COX

COMMISSIONER OF             MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Michelle Lynn Chema-Clark seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to social security for her physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 8) and Defendant's Motion for Summary Judgment (docket no. 12). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 2.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

I.      RECOMMENDATION:

This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 8) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 12) be GRANTED.

II.     PROCEDURAL HISTORY:

Plaintiff filed an application for Disability Insurance Benefits and an application for Supplemental Social Security Income with protective filing dates of July 30, 2009, alleging that

she had been disabled since February 26, 2008, due to pain in her left hand and wrist. (*See* TR 10.) The Social Security Administration denied benefits. (*See* TR 10.) Plaintiff requested a *de novo* hearing, which was held on October 4, 2010, before Administrative Law Judge (ALJ) Andrew G. Sloss, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 10-16.) The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced the instant action for judicial review. The parties then filed their Motions for Summary Judgment.

### III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

#### A. Plaintiff's testimony

Plaintiff was 38 years old at the time of the administrative hearing and 33 years old at the time of alleged onset. (*See* TR 15.) Plaintiff has an associate's degree in Criminal Justice and past work experience as a police officer and a corrections officer. (TR 27-28.) She testified that she hadn't worked anywhere since February 26, 2008 because she injured her left arm. (TR 23-24.) Plaintiff is right-handed. (TR 24.) At the time of the hearing her only source of income was her retirement. (TR 23-24.) She lived with her husband and her two children. (TR 25.)

Plaintiff testified that she could not sleep through the night because of the pain in her left arm and that she had to take naps during the day. (TR 24.) She also had a reaction to high-powered medication, so she treated her pain with a TENS unit. (TR 24.) Plaintiff had hand surgery and was in therapy for two years, two to three hours a day, but Plaintiff contended that her hand and wrist showed no improvement in function or in pain level. (TR 24.)

Plaintiff also testified, however, that she was able to drive, cook, follow written and spoken instructions, and handle her own finances. (TR 140-142.) At the hearing, Plaintiff

testified that her usual day consisted of seeing her kids off to school and hanging around the house until she had to go to her children's games or other activities. (TR 25.) She further testified that she was often unable to engage in activities that she used to perform, like going shopping, visiting friends, and going to church. (TR 25.) She also stated that she had problems concentrating because of the pain level, and that 25 out of 30 days in a month were "bad days" because of the extreme pain on her left hand. (TR 25.)

### B. Medical Record

Plaintiff was injured on February 22, 2008 when walking into work she fell, and landed on her side, hurting her left arm very seriously. (TR. 168.) On May 22, 2008, Plaintiff underwent a wrist-ligament-repair surgery with Dr. Edward Burke. (TR 186.) Dr. Burke recommended that Plaintiff undergo physical therapy for treatment and evaluation. (TR 210.) Plaintiff attended physical therapy for approximately two years, but it did not help eliminate Plaintiff's symptoms. (TR 24.)

On August 28, 2012 Dr. Burke provided an RFC assessment at the State's request. (TR 255.) Dr. Burke opined that Plaintiff "could lift and carry 20 pounds occasionally and ten pounds frequently and that she could stand and/or walk for a total of about six hours and sit for a total of about six hours in an eight hour work day, with normal breaks." (TR 225.) Dr. Burke further opined that Plaintiff "could frequently climb ramps and stairs, balance, stoop, kneel, and crouch, but could only occasionally crawl." (TR 225.) Dr. Burke further opined that Plaintiff was not able to return to work as a police officer because doing so would require unrestricted use of both upper extremities, which Plaintiff did not have. (TR 268.)

### C. The Vocational Expert

The ALJ asked VE to identify the past work performed by Plaintiff within the last 15 years. (TR 27.) The VE indicated that Plaintiff had worked as a police officer and a corrections officer, each of which was performed at the medium exertion level. (TR 27-28.)

The ALJ asked the VE to consider a hypothetical person of Plaintiff's age, education, and past work who is able to perform light work except that she is limited to occasional pushing or pulling with her left upper extremity. (TR 28.) The ALJ further asked the VE to assume that this person could not climb ladders, ropes, or scaffolds, and could only occasionally crawl, but could frequently climb ramps or stairs, balance, stoop, crouch or kneel, and was limited to occasional handling and fingering with her left (non-dominant) upper extremity. (TR 28.) The VE testified that there would be jobs available in the light work category as, for example, an usher, a counter clerk, or a sales attendant, totaling approximately 11,500 jobs in the region. (TR 28.)

The ALJ asked the VE to assume that such a person, due to a combination of her medical condition and associated pain, is unable to engage in sustained activity on a regular and continuing basis for eight hours a day, five days a week, for a 40-hour work week. (TR 28.) The VE indicated that competitive work at all exertion levels would be precluded for such an individual. (TR 28-29.)

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the disability insured status requirements through December 31, 2012, had not engaged in substantial gainful activity since February 26, 2008, and had a torn ligament in the left wrist, she did not have an impairment or a combination of impairments that met or equalled the Listing of Impairments. (TR 12-13.) The ALJ found that Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms

were not wholly credible. (TR 14.) After considering the record, the ALJ found that Plaintiff retained the residual function to perform light work except that Plaintiff could not climb ladders, ropes or scaffolds; could only occasionally crawl; could walk and stand for six hours, and sit for six hours; could occasionally push or pull with her left upper extremity and was limited to occasional handling or fingering or pull with her left upper extremity; and could lift or carry a maximum of 20 pounds occasionally and 10 frequently. (TR 12.) The ALJ then found that while Plaintiff could not perform her past work, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (TR 13-15.) Therefore, she was not suffering from a disability under the Social Security Act at any time from February 26, 2008, through the date of the ALJ's decision. (TR 15-16.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard*

*v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on

"the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C. Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that the ALJ's decision should be reversed or, in the alternative, remanded because the Commissioner did not meet his burden of showing that Plaintiff was capable of engaging in

work because Plaintiff's physical limitations prevent her from "fully performing any range of work." (*See* docket no. 8.)

1.     **The ALJ's Step-4 Finding; Plaintiff's RFC**

In determining Plaintiff's RFC, the ALJ first considered Plaintiff's testimony. He discussed Plaintiff's allegations related to the severity of her symptoms as set out through her testimony at the October 4, 2010 hearing. (*See* TR 20.) The ALJ then discounted Plaintiff's statements concerning her symptoms as not fully credible because "they are inconsistent with the residual functional capacity assessment." (TR 14.)

In support of his conclusion, the ALJ first considered Plaintiff's complaint of her left wrist and hand injury. (TR 12.) The ALJ noted that although Plaintiff testified that she had concentration problems due to her severe pain, a Field Office employee found that she had no problems with understanding, concentrating, or answering during a telephone interview; moreover, Plaintiff testified that she was able to handle her financial affairs and was able to follow written and spoken instructions. (TR 14.) The ALJ also noted that while Plaintiff testified that therapy did not help her left hand, her occupational-therapy discharge notes reported that Plaintiff had improved range of motion, grip, and pinch. (TR 14.)

An ALJ "may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree so long as the ALJ properly sets forth the basis for determining Plaintiff's credibility. SSR 96–7p. Here, the ALJ found that Plaintiff's statements were not credible, and the Court can find no fault in the ALJ's analysis of Plaintiff's subjective complaints.

After reviewing Plaintiff's medical records, the ALJ considered the medical opinion

submitted by Dr. Burke. (TR 14.) Dr. Burke opined that Plaintiff was not able to return to work as a police officer. The ALJ gave significant weight to this portion of Dr. Burke's opinion, as it was consistent with the records. With regard to Plaintiff's ability to lift, however, the ALJ found that Dr. Burke's opinion was inconsistent: in January 2010, Dr. Burke opined that Plaintiff was not able to lift over 20 pounds, but in December 2009, he reported grip strength tests that showed Plaintiff's grip strength was 20 pounds. (TR 14.) The ALJ further noted that Plaintiff's injury was to her left and non-dominant hand while her right hand was still in good condition; moreover, Plaintiff's left hand function had actually improved. (TR 14.) Thus, the ALJ rejected this portion of Dr. Burke's opinion. (TR 14). The ALJ appears to have properly weighed the medical evidence of record. The Court has found no evidence to conflict with the ALR's RFC finding and no reason to suggest that the ALJ's finding is not supported by substantial evidence.

### 2.     The ALJ's Step-5 Finding

In making his Step-5 finding, the ALJ relied on the testimony of the VE. In a hypothetical question posed to the VE, an ALJ is required only to incorporate those limitations that he finds credible and supported by the record. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Here, the ALJ presented all of the limitations of the RFC in his hypothetical questions to the VE, and the VE testified that there are jobs available for a person with these limitations. (TR 27-28.) Plaintiff's attorney questioned the VE as well. (TR 25.)

The ALJ then applied the VE's testimony in determining whether there were a significant number of jobs available in the economy that Plaintiff could perform. The VE testified without qualification that Plaintiff could perform at least 11,500 jobs that were available in the region.

(TR 28.) Although there is no "magic number" that constitutes a significant number of jobs, the Court finds that the ALJ's decision here is adequately supported. *See Hall v. Bowen, 837 F.2d 272, 274-75* (6th Cir. 1988) (finding that 1,350 to 1,800 jobs is a significant number of jobs available). There is no challenge to the reliability of the VE's testimony or any other reason to discount the ALJ's reliance on the VE's testimony regarding the number of available jobs. The ALJ's findings at step five are supported by substantial evidence.

## VI. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 8) should be DENIED and Defendant's Motion for Summary Judgment (docket no. 12) should be GRANTED.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 5, 2013        s/ Mona K. Majzoub
                             MONA K. MAJZOUB
                             UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 5, 2013        s/ Lisa C. Bartlett
                             Case Manager